FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

## Dec 03, 2021

SEAN F. McAVOY, CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RAYMOND A.,[1] | No.    4:20-cv-5216-EFS |
| Plaintiff, | |
| v. | **ORDER DENYING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND GRANTING DEFENDANT'S SUMMARY-JUDGMENT MOTION** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2] | |
| Defendant. | |

Plaintiff Raymond A. appeals the denial of benefits by the Administrative Law Judge (ALJ).  Because substantial evidence supports the ALJ's determination that Plaintiff is not disabled within the meaning of the Social Security Act, the Court denies Plaintiff's summary-judgment motion, grants the Commissioner's summary-judgment motion, and affirms the ALJ's decision.

---

[1] To protect their privacy, the Court refers to social security plaintiffs by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] On July 9, 2021, Ms. Kijakazi became the Acting Commissioner of Social Security. She is therefore substituted for Andrew Saul as Defendant. Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g).

# I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3]  Step one assesses whether the claimant is engaged in substantial gainful activity.[4]  If the claimant is engaged in substantial gainful activity, benefits are denied.[5]  If not, the disability evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities.[7]  If the claimant does not, benefits are denied.[8]  If the claimant does, the disability evaluation proceeds to step three.[9]

Step three compares the claimant's impairment or combination of impairments to several recognized by the Commissioner as so severe as to preclude substantial gainful activity.[10]  If an impairment or combination of impairments

---

[3] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[4] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[5] *Id.* §§ 404.1520(b), 416.920(b).

[6] *Id.* §§ 404.1520(b), 416.920(b).

[7] *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[8] *Id.* §§ 404.1520(c), 416.920(c).

[9] *Id.* §§ 404.1520(c), 416.920(c).

[10] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11]  If not, the disability evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[12]  If the claimant can perform past work, benefits are denied.[13]  If not, the disability evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied.  If not, benefits are granted.[15]

The claimant has the initial burden of establishing he is entitled to disability benefits under steps one through four.[16]  At step five, the burden shifts to the Commissioner to show the claimant is not entitled to benefits.[17]

---

[11] *Id.* §§ 404.1520(d), 416.920(d).

[12] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[13] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[14] *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497–98 (9th Cir. 1984).

[15] 20 C.F.R. §§ 404.1520(g), 416.920(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

## II.    Factual and Procedural Summary

Plaintiff filed Title II and Title XVI applications, alleging a disability onset date of October 16, 2017.[18]  His claims were denied initially and upon reconsideration.[19]  Administrative Law Judge Marie Palachuk presided over the requested administrative hearing by video.[20]

In the written decision denying Plaintiff's disability claims, the ALJ found as follows:

- Insured Status—September 30, 2018, was Plaintiff's date last insured.[21]

- Step One—Plaintiff had not engaged in substantial gainful activity since October 16, 2017, the alleged onset date.[22]

- Step Two—Plaintiff had the following medically determinable severe impairments:

  o degenerative disc disease of the lumbar spine,

  o mild asthma,

  o a depressive disorder,

  o an anxiety disorder,

  o an antisocial personality disorder, and

---

[18] AR 15, 206.

[19] AR 15, 29, 107–08.

[20] AR 15–28.

[21] AR 18.

[22] AR 18.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

- o   marijuana abuse/dependence.

- Step Three—Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.[23]

- RFC—Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except for the following limitations:

  - o   Plaintiff "can only occasionally climb ladders, ropes, and scaffolds but can otherwise frequently perform postural activities."

  - o   "He should avoid concentrated exposure to extreme temperatures, wetness, humidity and vibration and no more than moderate exposure to respiratory irritants."

  - o   He should be limited to "simple routine and repetitive tasks," and he can make only "simple routine type judgments."

  - o   He should work in "two-hour intervals between regularly scheduled breaks."

  - o   He should work in "a predictable environment with seldom changes."

  - o   He should not work under a "fast paced production rate of pace."

  - o   He can have "no contact with the public and only occasional and superficial interaction with coworkers and supervisors."

  - o   He "should be dealing with things rather than people."[24]

---

[23] AR 19–21.

[24] AR 21–26.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

- Step Four—Plaintiff was not capable of performing past relevant work.[25]

- Step Five—Considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as "Warehouse checker (DOT No. 222.687-010, light, SVP2/unskilled) with an availability of approximately 25,000 such jobs nationally; Garment sorter (DOT No. 222.687-014, light, SVP2/unskilled) with an availability of approximately 50,000 such jobs nationally; and Mail clerk (DOT No. 209.687-026, light, SVP2/unskilled) with an availability of approximately 100,000 such jobs nationally."[26]

The ALJ concluded Plaintiff "has not been under a disability within the meaning of the Social Security Act from October 16, 2017, through the date of [the ALJ's] decision."[27]  Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[28]  Plaintiff then timely appealed to this Court, primarily challenging the ALJ's analysis and findings regarding certain medical records, medical opinions, and symptom reports by Plaintiff.

---

[25] AR 27.

[26] AR 28.

[27] AR 16.

[28] AR 199.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[29] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[30]  Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[31]  Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[32]  The Court considers the entire record as a whole.[33]

Further, the Court may not reverse an ALJ decision due to a harmless error.[34]  An error is harmless "where it is inconsequential to the ultimate

---

[29] 42 U.S.C. § 405(g).

[30] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[31] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[32] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[33] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[34] *Molina*, 674 F.3d at 1111.

nondisability determination."[35]  The party appealing the ALJ's decision generally bears the burden of establishing harm.[36]

## IV.    Applicable Law & Analysis

Plaintiff alleges the ALJ erred by improperly (1) weighing/considering certain medical opinions, (2) discounting Plaintiff's symptom reports, (3) determining his back/spine impairments did not meet or equal a listing, (4) assessing Plaintiff's residual functional capacity, and, therefore, (5) relying on an incomplete hypothetical at step five.

### A.    Medical Opinions: Plaintiff fails to establish consequential error.

The regulations specify five categories of evidence: (1) objective medical evidence, (2) medical opinion, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.[37]  For medical opinions and prior administrative findings, an ALJ must expressly consider and evaluate the persuasiveness of each.[38]

---

[35] *Id.* at 1115 (cleaned up).

[36] *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

[37] 20 C.F.R. §§ 404.1513(a), 416.913(a).

[38] 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b).  For claims filed on or after March 27, 2017, such as Plaintiff's claims, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.

1

2

      1.    <u>The ALJ properly considered, accounted for, and found persuasive the</u>

            <u>psychological-evaluation report authored by Dr. Cooper.</u>

3

CeCilia R. Cooper, Ph.D. conducted a psychological evaluation of Plaintiff in

4

June 2018, noting his chief complaint was "I freak out.  I have a lot of anger issues.

5

I am always nervous."[39]  As relevant here, Dr. Cooper diagnosed Plaintiff with

6

antisocial personality disorder and cannabis use disorder, and she found that he

7

had mild to moderate impairments in memory and judgment.[40]  She also found,

8

however, that Plaintiff lacked any notable impairments in orientation, immediate

9

memory, or his ability to engage in abstract reasoning, maintain attention and

10

concentration, and complete tasks involving two or three unrelated steps.[41]

11

Regarding Plaintiff's memory issues, Dr. Cooper said that "[b]ecause of

12

motivational factors, and his use of cannabis, he may need reminders for longer

13

periods."[42]  Her prognosis was that with "repetition, self-helps, and sufficient

14

motivation[,] memory issues would not present a significant barrier to success in

15

work-like settings."[43]  Dr. Cooper similarly said that evidence "suggests he could

16

17

18

---

19

[39] AR 360.

20

[40] AR 364–67, 369.

21

[41] AR 364–67.

22

[42] AR 369.

23

[43] AR 369.

also learn to control [his anger] outbursts."[44]  Yet, she kept her prognosis "very guarded," noting that Plaintiff "is not motivated to be more productive."[45]

### a.    *By pointing to specific parts of Dr. Cooper's report, Plaintiff challenges how the ALJ used the report in crafting the RFC.*

The ALJ found Dr. Cooper's report persuasive.[46]  Plaintiff does not dispute this persuasiveness finding but instead argues, essentially, that the ALJ did not truly treat Dr. Cooper's report as persuasive.[47]  Plaintiff asserts that if the report were "properly considered," then he would necessarily have been found disabled.[48]  By doing so, Plaintiff is challenging ALJ's translation and incorporation of medical evidence into an RFC and must therefore show how the ALJ's use of Dr. Cooper's report was unreasonable and affected the ultimate outcome.[49]

Plaintiff points out that he reported ongoing anger issues to Dr. Cooper, saying, "I still have my freak-outs.  I yell and scream and throw things about twice a week at least.  It used to be daily."[50]  He also highlights Dr. Cooper's statement

---

[44] AR 367.

[45] AR 369.

[46] AR 26.

[47] *See* Plaintiff's MSJ, ECF No. 14, at 9.

[48] Plaintiff's MSJ at 9.

[49] *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[50] Plaintiff's MSJ at 9; AR 361.

that "[e]ven when he is given significant positive feedback, [Plaintiff]'s relationships with supervisors and other persons in worklike settings is apt to deteriorate because of his personality factors."[51]  This, Plaintiff argues, shows that he would have "two to three instances of yelling or swearing at supervisors or coworkers," which would result in "strained interactions with supervisors" and preclude competitive employment.[52]

> b.    _The ALJ properly considered and accounted for Dr. Cooper's report—including the portions cited by Plaintiff._

As a preliminary matter, Dr. Cooper did not necessarily tie the likely deterioration of Plaintiff's workplace relationships to his antisocial-personality-disorder (or any other diagnosis); rather, Dr. Cooper indicated such relationships were "apt to deteriorate because of his _personality factors._"[53]  It is unclear what those particular "personality factors" were and whether they stemmed from a medically determinable impairment.[54]  Indeed, the report repeatedly states that

---

[51] Plaintiff's MSJ at 9; AR 369.

[52] Plaintiff's MSJ at 9–10; Plaintiff's Reply, ECF No. 16, at 3.

[53] AR 369 (emphasis added).

[54] _Cf._ SSR 96-8p, 1996 WL 374184 at *2 ("It is incorrect to find that an individual has limitations or restrictions beyond those caused by his or her medical impairment(s). . . .").

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 11

many of Plaintiff's problems arise from a lack of motivation and cannabis use.[55] Read a whole, Dr. Cooper's report essentially stands for the proposition that Plaintiff is able—but not willing—to work.

Perhaps more importantly, the ALJ directly addressed the very portion of Dr. Cooper's report relied upon by Plaintiff.[56]  The ALJ provided in her RFC assessment that Plaintiff could have "no contact with the public and only occasional and superficial interaction with coworkers and supervisors," and that he "should be dealing with things rather than people."[57] The ALJ also specifically noted that one of the reasons why Dr. Cooper's report was considered persuasive in the first place was because it "acknowledged/took into account [Plaintiff's] motivational factors."[58]  This substantial evidence shows that the ALJ rationally incorporated Dr. Cooper's opinion into the RFC.[59]

---

[55] *See, e.g.*, AR 369 ("He is not motivated to be more productive. . . . With repetition, self-helps, and sufficient motivation memory issues would not present a significant barrier to success in work-like settings."); *id.* ("Because of motivational factors, and his use of cannabis, he may need reminders for longer periods.")

[56] AR 25–26.

[57] AR 21.

[58] AR 26.

[59] *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

1

2    **2.    The ALJ did not need to expressly address the letter written by Nurse Hull, because it was not a "medical opinion."**

3    Plaintiff next argues the ALJ failed to address a "disabling opinion" by his

4    mental-healthcare provider, Stephen A. Hull, ARNP.[60]  The administrative record

5    indicates that Plaintiff started seeing Nurse Hull for mental-health services

6    beginning near the end of November 2017.[61]  About two months later, in connection

7    with their third session together, Nurse Hull wrote for Plaintiff the following letter,

8    which Plaintiff asserts the ALJ was required to address:

9        To Whom It May Concern:

10       [Plaintiff] is currently my patient and is being treated for severe
         depressed mood, anxiety, and anger.  Due to the severity of his
11       mental health issues, he is not functional[,] affecting his ability to
         work.
12       If you have any questions or concerns, please don't hesitate to call.

13       Sincerely,
         Stephen A Hull, ARNP[62]

14

15

16

17

18    ───────────────────

19    [60] Plaintiff MSJ at 10.

20    [61] AR 317, 330, 422.

21    [62] AR 406.  Notably, an attorney for the local child-support division called nurse

22    Hull to inquire about this letter, saying he was confused because Plaintiff "was

23    working at a drive-through restaurant and was reported to do well at his job." *Id.*

Although Nurse Hull is an acceptable medical source,[63]—and despite Plaintiff implying that the letter qualifies as "medical opinion evidence"[64]—the broad and vague statements in his letter do not amount to a "medical opinion" for purposes of the Social Security Act.[65]

For purposes of the Social Security Act, the term "medical opinion" has a limited meaning. A statement by a medical source qualifies as a medical opinion only if that statement is about what the claimant can still do despite his impairments and whether the claimant has one or more impairment-related limitations in the following abilities:

- performing physical demands of work activities;

- performing mental demands of work activities (such as understanding, remembering, carrying out instructions, maintaining concentration, persistence, or pace, and responding appropriately to supervision, co-workers, or work pressures in a work setting);

- performing sensory demands of work; and

- adapting to environmental conditions.[66]

---

[63] *See* 20 C.F.R. §§ 404.1502, 416.902.

[64] *See* Plaintiff's MSJ at 9–10 (placing this argument under a heading entitled "The ALJ improperly evaluated the medical opinion evidence.").

[65] *See* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).

[66] *Id.*

1       Here, the letter did not provide an opinion regarding what Plaintiff could

2  still do despite his impairments.[67]  Nor did it contain a statement about whether

3  Plaintiff had any particular impairment-related restrictions in his ability to

4  perform physical or mental demands of work activities, perform sensory demands

5  of work, or adapt to environmental conditions.[68]  Nurse Hull's conclusory statement

6  was akin to a finding that Plaintiff was disabled—a finding reserved for the

7  Commissioner.[69]  Accordingly, the ALJ was not required to expressly address the

8  regulatory factors as would have been required for a medical opinion.[70]

9

10

---

11  [67] *See id.*

12  [68] *See id.*

13  [69] Opinions that a claimant is or is not disabled, blind, able to work, or able to

14  perform regular or continuing work," and whether a claimant has "a severe

15  impairment," are statements on issues reserved to the Commissioner. 20 C.F.R.

16  § 404.1520b(c)(3).  They are deemed "inherently neither valuable nor persuasive,"

17  and an ALJ generally "will not provide any analysis about how [she] considered

18  such evidence in [her] determination or decision, even under § 404.1520c." *Id.*

19  [70] *Cf. id.* § 404.1520c(b) (requiring only that the ALJ articulate the persuasiveness

20  for each *medical opinion*); *cf. also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir.

21  2002) ("The ALJ need not accept the opinion of any physician, including a treating

22  physician, if that opinion is brief, conclusory, and inadequately supported by

23  clinical findings.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

The letter instead falls within the category of "other medical evidence," because it describes Nurse Hull's judgments about the nature and severity of Plaintiff's impairments and his medical history, diagnoses, and prognosis.[71] Plaintiff has provided no reason why the ALJ needed to expressly address the letter as other medical evidence.[72] Plaintiff has therefore failed to show that the ALJ harmfully erred.

    3.    <u>Substantial evidence supported finding Dr. Smiley's testimony persuasive, and any hypothetical error would be harmless.</u>

During the hearing, reviewing medical expert, Robert Smiley, M.D. testified that although Plaintiff had an impairment involving low back pain, the medical record did not support it resulting in disability.[73] The ALJ found Dr. Smiley's testimony "persuasive, as well as consistent with the claimant's record."[74] Plaintiff argues the ALJ erred by finding that Dr. Smiley's testimony was consistent with

---

[71] *See* 20 C.F.R. § 404.1513(a)(3); SSA POMS DI 24503.040 (a statement by a medical source on an issue reserved to the Commissioner is considered "other medical evidence").

[72] *Cf.* SSA POMS DI 24503.040 (directing ALJs, "Do not provide written analysis about a statement on an issue reserved to the Commissioner.").

[73] *See, generally*, AR 37–45.

[74] AR 25.

1    the medical record.  Plaintiff also challenges the ALJ's finding that Dr. Smiley was

2    familiar with the Social Security disability evaluation criteria.[75]

3        a.    _Substantial evidence supported finding that Dr. Smiley's_

4              _testimony was consistent with Plaintiff's medical record._

5        Plaintiff asserts that Dr. Smiley's testimony was inconsistent because "the

6    record demonstrates muscle weakness, with various 3/5 strength findings,

7    accompanied by reflex loss (absent bilateral reflex knee jerk, absent left reflex

8    ankle jerk) and sensory loss."[76]  But Dr. Smiley directly addressed the strength and

9    sensory-loss findings cited by Plaintiff.  Dr. Smiley explained that those findings

10   were not objective and instead relied upon the Plaintiff's cooperation, making them

11   less reliable.[77]  Further, as the ALJ noted, the medical record taken as a whole

-----

13   [75] Plaintiff's MSJ at 11.

14   [76] Plaintiff's MSJ at 12.

15   [77] AR 40–43.  Plaintiff also cites the May 2019 examination as showing "reflex loss

16   (absent bilateral reflex knee jerk, absent left reflex ankle jerk)." Plaintiff's MSJ

17   at 12.  That report, however, lists the reflex results for the ankle-jerk test as "L-

18   none; R-small" and the results for knee-jerk test "B-none." AR 567.  These

19   notations are not perfectly clear, but the Court cannot agree with Plaintiff's

20   apparent interpretation that the word "none" was meant to indicate the tested

21   reflexes were "absent."  It is far more likely that the word "none" was meant to

22   indicate a lack of deviation from the norm, especially given the rest of the medical

23   record, as well as the "small" notation also used in the same report.

1   does *not* indicate any significant loss in the motor, sensory, or reflex categories.  To

2   the contrary, the bulk of the relevant medical findings—authored both before and

3   after the findings cited by Plaintiff—show a normal gait and no significant

4   decrease or other problems in motor strength, sensory loss, or reflexes.[78]  This

5   substantial medical evidence supports the ALJ's finding that Dr. Smiley's

6   testimony was consistent with the medical record, and Plaintiff has not shown that

7   the ALJ reversibly erred in this regard.

8           b.      *Any error regarding Dr. Smiley's familiarity with Listing 1.04A*

9                   *was harmless.*

10          Plaintiff also asserts that "Dr. Smiley was apparently unfamiliar with the

11  Social Security disability evaluation criteria, as he repeatedly stated that

12  Listing 1.04 requires atrophy/motor loss."[79]  That listing requires, among other

13  things, evidence of nerve root compression characterized by "motor loss (atrophy

14  with associated muscle weakness *or* muscle weakness) accompanied by sensory or

15  reflex loss."[80]

16

17

18  _____

19  [78] *See, e.g.*, AR 396–98 (Mar. 2018); AR 357–58 (June 2018); AR 474 (Aug. 2018);

20  AR 480 (Sept. 2018); AR 506 (Oct. 2018); AR 517 (Dec. 2018); AR 645–46 (Mar.

21  2019) AR 631 (Sept. 2019).

22  [79] Plaintiff's MSJ at 11–12 (citing to AR 40–42).

23  [80] 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04A (emphasis added) (2020).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 18

Consistent with the listing, Dr. Smiley testified that 1.04A requires "measurable motor loss and either sensory or deep tendon reflex loss."[81]  He also opined that muscle-weakness findings in the form of "3/5, 5/5 et cetera would not suffice as the requisite evidence, because they were too subjective.[82]  Dr. Smiley said this means "[t]here has to be actual atrophy" to show the requisite motor loss, "because the measurements are objective."[83]  Thus, Dr. Smiley was opining as to *practical* limitations—based on reliability considerations—on what type of medical evidence was needed to show the requisite motor loss, and his testimony was not necessarily inconsistent with Listing 1.04A.

Even if Dr. Smiley's testimony did somehow suggest he lacked knowledge as to Listing 1.04A, his familiarity "with the Social Security disability evaluation criteria" was only one of several reasons provided by the ALJ in support of her persuasiveness finding.  Chief among the ALJ's considerations were supportability and consistency, which are generally the most important factors in a persuasiveness analysis.[84]  As Dr. Smiley supported his opinions with reference to

---

[81] AR 38, 42–43

[82] See AR 42–43.

[83] AR 42–43.

[84] *See* AR 25 (citing the consistency with the record, his references to specific exhibits, and opportunity to review Plaintiff's entire medical record); *see also* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

1  the medical record and they were consistent with the overall medical record,

2  substantial evidence supports the ALJ finding his medical opinions persuasive.

3      4.   <u>Substantial evidence supported finding the State agency medical</u>

4          <u>opinions to be generally persuasive.</u>

5      The State agency medical consultant, Debra Baylor, M.D., opined in June

6  2018 that Plaintiff had a medium level RFC with postural and environmental

7  limitations.[85]  Upon reconsideration in August 2018, State agency medical

8  consultant, Dennis Koukol, M.D., opined that the RFC should be lowered to light

9  level with postural and environmental limitation.[86]  Regarding these opinions, the

10  ALJ found, in part, that "[t]hese early record reviewing assessments can generally

11  be found persuasive since there has been no evidence received since that would

12  significantly alter or modify them."[87]

13      Plaintiff takes issue with the finding quoted above.  He argues it reflects

14  error because after those medical consultants issued their opinions, "evidence of

15  nerve root compromise, sensory deficits, range of motion restrictions, and muscle

16  weakness" was added to the record.[88]  Plaintiff cites to a subsequent MRI, two

---

[85] AR 84–85.

[86] AR 100–102.

[87] AR 24.

[88] Plaintiff's MSJ at 12–13.

progress notes, and a functional capacity evaluation, arguing that they "all tend to 'significantly alter or modify' the early record assessments."[89]

        a.    <u>*Plaintiff's cited medical records are inconsistent with each other as well as with other medical evidence.*</u>

The progress notes cited by Plaintiff (authored in December 2018 and February 2019) both indicate an unspecified amount of sensory loss but little-to-no loss in motor function.[90]  In contrast, the May 2019 functional capacity evaluation—to which Plaintiff also cites—indicates no sensory loss but moderate-to-slight motor loss.[91]  Further, all three records contain inconsistencies with the rest of the medical record as a whole.[92]  For instance, the same treating ARNP who

--------

[89] Plaintiff's MSJ at 12–13; *see also* AR 615–16, 634–35 (Aug. 2018 MRI); AR 517 (Dec. 2018 ARNP progress notes); AR 541 (Feb. 2019 ARNP progress notes); AR 565–66 (May 2019 functional capacity evaluation).

[90] AR 517, 541.

[91] AR 565–66.

[92] *See, e.g.*, AR 397–98 (March 2018: motor exam, light-touch sensory exam, gait, and range of motion were all normal, and 5/5 strength throughout); AR 357–58 (June 2018: gait, range of motion, sensory exam, and deep tendon reflexes were all normal, the straight-leg-raising exam was negative to 90 degrees, both seated and supine bilaterally, and motor strength 5/5 throughout); AR 474 (August 2018: gait and sensory exam were normal, the straight-leg-raising exam was negative bilaterally, and motor was 5/5 throughout).

1    authored the cited progress notes later recorded unremarkable exam findings in

2    the same areas, including "Motor: 5/5 throughout," "Sensory: Normal to light touch

3    throughout," and "Patellar DTRs +2 bilaterally."[93]

4        a.    *The ALJ expressly addressed the evidence cited by Plaintiff.*

5        Immediately following the very language with which Plaintiff takes issue,

6    the ALJ went on to provide that "in light of image findings showing disc

7    protrusions, a light level residual functional capacity with postural and

8    environmental limitations would be more appropriate/reasonable."[94]  The ALJ not

9    only expressly addressed the MRI in question and found that it *did* warrant

10   limitations beyond those described by the State agency medical experts, she also

11   expressly addressed and dismissed the few "positive" medical findings that are

12   selectively cited by Plaintiff.[95]  The ALJ reasonably explained that they were

13

14

15   ───────────────

16   [93] AR 631 (Sept. 2019 ARNP progress note).  Notably, "+2" indicates a reflex "in the

17   lower half of the normal range," which supports the ALJ's finding that there was

18   no showing of reflex loss. *See* National Institute of Neurological Disorders and

19   Stroke, *Muscle Stretch Reflex Scale*, available at

20   https://www.ncbi.nlm.nih.gov/books/NBK531502/ (last accessed Oct. 25, 2021).

21   [94] AR 24.

22   [95] AR 19, 22, 24–25; *see also*, *generally*, AR 23–26 (analyzing Plaintiff's medical

23   record and providing explanations for findings).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 22

1   "subjective reports and depended on the patient's cooperation," and that "the

2   overwhelming majority of the time the claimant's findings were negative."[96]

3        Substantial evidence supports the ALJ's analysis, and Plaintiff provides no

4   reason why the three particular records he cites are superior to other—

5   conflicting—medical evidence of record.  Plaintiff therefore fails to show any error

6   in the ALJ's analysis or her findings regarding the persuasiveness of the State

7   agency medical opinions.

8            b.    _Plaintiff fails to show how any error could have prejudiced him._

9        Even assuming arguendo that the ALJ somehow erred in finding the State

10  agency medical opinions to be "generally" persuasive, Plaintiff does not articulate

11  how such an error would have altered the ultimate determination.[97]  The ALJ

12  referred to these medical opinions only when finding *additional* functional

13  limitations.[98]  If anything, this persuasiveness finding likely resulted in a more

14  stringent RFC than the ALJ would have otherwise found.

15

16

17

18  ───────────────────

19  [96] AR 19, 22, 24–25.

20  [97] Plaintiff—not the Court—must flesh out and support his arguments with law

21  and facts. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 930 (9th Cir.

22  2003) ("We require contentions to be accompanied by reasons.").

23  [98] *See* AR 21, 24 (adopting a light level RFC and environmental limitations).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 23

**B.    Step Three (Listings): Plaintiff fails to establish consequential error.**

At step three, the ALJ must determine if a claimant's impairments either meet or equal a listed impairment.[99]  To meet a listed impairment, the claimant has the burden of establishing that he meets *all* the criteria of a listed impairment.[100]  Alternatively, to equal a listing, the claimant must show that for *each* of the listing's criteria he has impairments that are "at least equal in severity and duration."[101]

1.    <u>In asserting that he meets Listing 1.04A, Plaintiff reasserts his arguments regarding evidence of motor loss.</u>

Plaintiff asserts that his impairments met or equaled Listing 1.04A.  This once again makes evidence of motor loss the key issue, as that listing states as follows:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With: A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of

---

[99] 20 C.F.R. § 404.1520(a)(4)(iii).

[100] *Id.* § 404.1525(d); *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

[101] 20 C.F.R. § 404.1526(a), (b); SSR 17-2p, 2017 WL 3928306, at *4; *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (requiring a claimant to show that the impairment meets—or medically equals—all of the specified medical criteria, not just some of the criteria).

the lower back, positive straight-leg raising test (sitting and supine)[.][102]

2.     The ALJ sufficiently discussed and evaluated the medical evidence, and substantial evidence supports her listing findings.

Here, the ALJ concluded that Plaintiff's overall medical record was insufficient to satisfy the motor-loss criteria in Listing 1.04A. The ALJ agreed instead with Dr. Smiley's assessment that Plaintiff did not exhibit "measurable motor loss or atrophy."[103] The ALJ reasoned "there has been no indication that the claimant has been unable to ambulate effectively, and his examinations have generally been unremarkable with limited range of motion restrictions, and motor, sensory or reflex loss."[104] And, although Plaintiff again cites to the limited evidence in the medical record that arguably supports a motor-loss finding, the ALJ rationally rejected such evidence based on Dr. Smiley's testimony regarding its subjective nature as well as its inconsistency with the overall medical record.

The ALJ found there was an insufficient showing of motor loss, and she supported this finding with substantial evidence. Nothing more was required to

---

[102] 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04 (emphasis added).

[103] AR 25.

[104] AR 19. In doing so, the ALJ expressly noted Plaintiff's spinal imaging and MRI results. Plaintiff is incorrect in asserting that the ALJ "made no mention of this highly probative evidence at step three." Plaintiff's MSJ at 14.

conclude 1.04A was inapplicable.[105]  The ALJ need not "state why a claimant failed to satisfy every different section of the listing of impairments."[106]  Nor has Plaintiff articulated any theory or evidence showing how he nonetheless equaled either Listing 1.04A or any other listings.[107]  Thus, Plaintiff fails to establish the ALJ erred at step three by finding Plaintiff's impairments did not meet or equal a listing.

## C.    Plaintiff's Symptom Reports: Plaintiff fails to establish consequential error.

In examining Plaintiff's symptom reports, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]"[108]  To reject Plaintiff's statements regarding the severity of

---

[105]  *See* SSR 17-2p (requiring no more detail than is sufficient to allow for meaningful review of the decision).

[106] *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990); *see also* SSR 17-2p.

[107] *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (providing that an ALJ's analysis will not be considered erroneous if the claimant proffers no plausible theory as to how his impairments satisfied the specific criteria of a giving listing). For this same reason, the Court does not address Plaintiff's single sentence challenging the ALJ's step three findings regarding the severity of his mental-health impairments. *See* Plaintiff's MSJ at 16.

[108] AR 22.  *See also*, *Molina*, 674 F.3d at 1112 (describing the two-step analysis applicable when analyzing a claimant's symptom reports).

1    his symptoms, the ALJ was therefore required to provide "specific, clear and

2    convincing reasons."[109]  The ALJ did so.

3        1.    <u>The ALJ articulated contradictions between Plaintiff's reports and the</u>

4             <u>bulk of the medical evidence.</u>

5        The ALJ found that Plaintiff's "statements concerning the intensity,

6    persistence and limiting effects" of his symptoms were "not entirely consistent with

7    the medical evidence and other evidence in the record."[110]  The ALJ noted that

8    although Plaintiff's counsel "spent a great deal of time raising the few instances

9    when the claimant had some clinical findings (sensory and strength loss, positive

10   straight leg raising), the overwhelming majority of the time [Plaintiff's] findings

11   were negative."[111]  And the ALJ found the same for Plaintiff's reports of "memory

12   problems and inappropriate, threatening, and intimidating behavior and difficulty

13   getting along with others as a result," noting that Plaintiff's "psychiatric findings

14   have routinely been normal."[112]

15       Substantial medical evidence supports the ALJ's conclusion.[113]  Contrary to

16   Plaintiff's assertions, by citing "negative" and "normal" findings, the ALJ was not

17   _____

18   [109] *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*,

19   504 F.3d at 1036).

20   [110] AR 22.

21   [111] AR 22 (internal administrative-record citations omitted).

22   [112] AR 22.

23   [113] *See, e.g.*, AR  357–58, 365, 397–98, 474, 508–09.

merely pointing to "a general lack" of findings.[114]  Rather, the ALJ was explaining that there are *several* relevant findings in the medical record, and most of those findings contradict Plaintiff's reports of symptoms with greater severity. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."[115]  Thus, even if the Court could find error in the additional reasons provided by the ALJ for discrediting Plaintiff's symptom reports, such error would be found harmless.[116]

---

[114] *See* Plaintiff's MSJ at 17. *Cf. also* 20 C.F.R. § 404.1529(c)(2) ("[The ALJ] will not reject [a claimant's] statements about the intensity and persistence of [his] pain or other symptoms or about the effect [his] symptoms have on [his] ability to work solely because the available objective medical evidence does not substantiate [his] statements.").

[115] *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F. 3d 1155, 1161 (9th Cir. 2008); 20 C.F.R. § 404.1529(c)(4) (requiring the ALJ to "consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence"); SSR 16-3p, 2017 WL 5180304 ("[The ALJ] must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record.").

[116] A court need not uphold all of an ALJ's reasons for discrediting a claimant, so long as substantial evidence supports the ALJ's ultimate credibility conclusion.

1

2

2.    <u>The ALJ provided additional specific, clear, and convincing reasons for</u>

<u>discounting Plaintiff's symptom reports.</u>

3

4    The ALJ also provided several other legitimate reasons, supported by

substantial evidence, for discounting Plaintiff's symptom reports.  Especially taken

5    together, they amount to additional clear and convincing reasons supporting the

6    ALJ's decision to partially discredit Plaintiff's symptom reports.

7    For example, the ALJ found Plaintiff's medical record showed "both physical

8    and mental improvement with treatment."[117]  Although, as is normal, Plaintiff's

9    symptoms waxed and waned at times, the ALJ rationally interpreted the entire

10    collection of medical reports to show that—overall—the medication and other

11    treatments were successful in significantly reducing Plaintiff's back and mental-

12    health symptoms.[118]  The effectiveness of available treatment is a relevant factor in

13

14    _____

15    *Carmickle*, 533 F.3d at 1162–63 (upholding an ALJ's credibility determination

16    although two of the ALJ's reasons were held invalid).

17    [117] AR 22–23.

18    [118] *See, e.g.*, AR 361 (Plaintiff "feels the lamotrigine helps him control anger.");

19    AR 396 ("He was improving and eventually stopped physical therapy."), AR 550

20    ("He recently had a steroid injection in his lumbar spine and feels better.  He did

21    note some occasional times when he feels jittery and fidgety but not as bad as in

22    the past.  Also anger is greatly reduced and his family is happier."), AR 392, 467,

23    617, 630, 664, 666 (each reporting improvement).

1    determining the severity of a claimant's symptoms.[119]

2        The ALJ observed that some asserted limitations—such as Plaintiff having

3    increased problems if "he did not like what he was doing"—are volitional rather

4    than derived from any medical condition.[120]  The ALJ was free to consider whether

5    Plaintiff had reasons aside from disability for not engaging in gainful

6    employment.[121]

7        Finally, in addition to articulating how Plaintiff's claims were inconsistent

8    with what *was* contained in the record, the ALJ also noted what was *not* in the

9    record.  "[N]one of the asserted limitations itemized by the claimant's

10    representative have been substantiated or supported by the record and in most

11    cases, never mentioned (limitations for handling/fingering, a need to lay down

_____

13    [119] 20 C.F.R. §§ 404.1529(c)(3), 416.913(c)(3); *Wellington v. Berryhill*, 878 F.3d 867,

14    876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving

15    symptoms can undermine a claim of disability."); *Warren ex rel. E.T. IV v. Comm'r*

16    *of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ([T]he key question is . . .

17    whether the severity of the problem had decreased sufficiently to enable him to

18    engage in gainful activity.").

19    [120] AR. 26 (citing Dr. Cooper's psychological evaluation of Plaintiff).

20    [121] *See Tommasetti v. Astrue,* 533 F.3d 1035, 1040 (9th Cir. 2008) (an ALJ may

21    consider evidence related to the claimant's "motivation to work"); *Thomas v.*

22    *Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (considering evidence that the

23    claimant had shown "little propensity to work in her lifetime").

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 30

during the day, and aggressive outburst and threatening behavior, and need for frequent reminders/memory dysfunction).”[122]  While the lack of corroborating objective medical evidence could not—and did not—serve as the ALJ's *sole* reason for rejecting Plaintiff's symptom reports, the ALJ was still free to consider it as a "relevant factor" in determining the severity and disabling effects of Plaintiff's symptoms.[123]

**D.    The RFC & Step Five: Plaintiff fails to establish consequential error.**

Plaintiff argues "the vocational testimony relied on by the ALJ at step five was without evidentiary value because it was provided in response to an incomplete hypothetical."[124]  Plaintiff argues the RFC and the hypothetical should have included one or more of the following additional limitations:

> limited to occasional handling and fingering, the need to lie down two to three times per day for approximately one hour each time, off-task and unproductive at a rate of 10% or more than the average worker doing the same job, unscheduled absences occurring one to two days per month on an ongoing basis, two to three incidents of yelling or swearing at supervisors/coworkers, or the need for multiple reminders each shift past the probationary period . . . .[125]

But, in support of these proposed limitations, Plaintiff cites to the same medical records and symptom reports that the Court has already addressed.

---

[122] AR 22.

[123] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

[124] Plaintiff's MSJ at 20.

[125] Plaintiff's MSJ at 20.

As discussed throughout this decision, substantial evidence supports the challenged ALJ findings, and she reasonably rejected the evidence repeatedly asserted by Plaintiff.  It is the ALJ—not Plaintiff, and not the Court—who "is responsible for translating and incorporating clinical findings into a succinct RFC."[126]  Although Plaintiff may have reasonably interpreted some of the evidence differently, the ALJ's RFC assessment was nonetheless based on a rational interpretation of the evidence, and this Court will not disturb that assessment.[127]

Because substantial evidence supported the ALJ's RFC determination, Plaintiff has failed to show that the hypothetical presented to the vocational expert was in any way deficient.  The ALJ therefore properly relied on the vocational expert's testimony at step five to conclude that Plaintiff was not disabled because he could perform substantial gainful work that exists in significant numbers in the national economy.

## V.    Conclusion

Plaintiff has not shown that the ALJ committed any reversible error, and substantial evidence supports each of the challenged findings.  The Court therefore affirms the ALJ's determination that Plaintiff is not disabled for purposes of the Social Security Act.

Accordingly, **IT IS HEREBY ORDERED**:

1.    The case caption is to be **AMENDED** consistent with footnote 2.

---

[126] *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

[127] *See Carmickle*, 533 F.3d at 1161.

2.    Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

3.    The Commissioner's Motion for Summary Judgment, **ECF No. 15**, is

**GRANTED**.

4.    The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

5.    The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and provide copies to all counsel.

**DATED** this 3rd  day of December 2021.


　　　　　　　　　　s/Edward F. Shea
　　　　　　　　　　EDWARD F. SHEA
　　　　　　　　Senior United States District Judge